IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

RAYMOND JOEL TAFOYA,

    Petitioner,                      2: 07 - cv - 2389 - GEB TJB

vs.

R.J. SUBIA, Warden

    Respondent.                  FINDINGS AND RECOMMENDATIONS

_____/

## I. INTRODUCTION

Petitioner, Raymond Joel Tafoya, is a state prisoner proceeding *pro se* with a petition for writ of habeas corpus brought pursuant to 28 U.S.C. § 2254. Petitioner is currently serving a sentence of seventeen years to life imprisonment following his 1991 conviction for second degree murder. Petitioner challenges the October 12, 2005 decision by the Board of Parole Hearings ("Board") which denied him parole. Petitioner presents several claims in his federal habeas petition; specifically: (1) the California Department of Corrections and Rehabilitation ("CDCR") failed to comply with section 62090.13 of its operating procedure by not obtaining a new psychiatric evaluation prior to Petitioner's suitability hearing ("Claim I"); (2) the CDCR's denial of parole violated Petitioner's due process rights because the denial was based solely on the facts of his commitment offense ("Claim II"); (3) Petitioner's due process rights were

1

violated when the denial of parole was based upon a falsified statement introduced at Petitioner's parole suitability hearing ("Claim III"); and (4) Petitioner's counsel was ineffective when he allowed the falsified statement to be read into the record at Petitioner's parole suitability hearing ("Claim IV"). (Pet'r's Pet. at p. 5-6.) Based on a thorough review of the record and the applicable law, it is recommended that the Petition be denied.

## II. FACTUAL AND PROCEDURAL BACKGROUND[1]

> On June 20th, 1989, Mr. Tafoya and a friend of his Nathaniel Thompson . . . . went to drive-in movies with their girlfriends and Thompson's small children. They went to the drive-in and they consumed beer and gin. They stayed at the movies until the early morning hours of June 21st, 1989. While traveling home in Thompson's father's van, they were caught in gun fire on the 65th Avenue Village area. No one in the van was hurt, but the right back of the door was damaged by three or four bullet holes. No one in the van saw who shot at the path of the van. Thompson was so angry and upset while shots were still being fired, he jumped out of the van and (indiscernible) started yelling several times, "What the fuck are you guys doing?" Et cetera. After he got back in the van and then went to Johnny's Liquors and surveyed the damage to the van. From there, they drove to Thompson's house. They parked the van around the back of the house just in case someone was following them . . . Thompson and Tafoya walked the women and children inside Thompson's house and then left. They went to Tafoya's house to get guns. (Thompson had said to Tafoya that he wished he had a gun and Tafoya said he knew where to get one). They got a 30/30 caliber rifle and a 12 gauge shotgun from Tafoya's house. From there, they drove back to Thompson's house, and parked the van behind the house. They left the guns in the van. In Thompson's house they discussed what they were going to do and where they going to do. They left the guns at Thompson's house and in the pretense of taking the girls for a walk, they surveyed the area where they would go back to with guns. After they determined the route they would take, they took the girls back to Thompson's house and got the guns. Tafoya had the rifle, Thompson had the shotgun. Both of them had the weapons concealed. Thompson's girlfriend pleaded with them not to go out again, but he ignored the pleas. From Thompson's house, they ran down the street cut through a convalescent home, jumped the fence, and ended up at 65th Avenue in the same area where the van was shot. Riding in the same area was the victim, Shawn

---

[1] The factual background of the commitment offense is taken from the probation report which was read into the record at Petitioner's parole hearing. The Respondent attached the parole suitability hearing transcript to his Answer in Exhibit 7 at p. 21-82.

2

> Johnson and two others, Shante . . . Johnson and Robert Cash. They were merely walking across the street completely unarmed, minding their own business. When seeing the men from approximately (indiscernible) Tafoya shot twice in the direction of Shawn Johnson. Johnson fell after the first shot, according to Shante Johnson, sustaining one bullet to the back of the head. The other two fled. Thompson had his finger on the trigger of the shotgun, and in attempts to fire it, could not work the safety. He admitted that he probably would of shot if he could have figured out the safety. After the shooting, both of them ran back to Thompson's house and they made up the story that if they were questioned about the shooting incident on 65th Avenue, they would say that they were just out walking the dog. Later that day, Tafoya sold the rifle to a unknown black man for $50, "because the police came," to his house. He also got a (indiscernible) police could not find him." On June 30th, 1991, Tafoya was questioned by the (indiscernible) police department about Shawn Johnson's death. Tafoya conveyed regarding information stating that their intention of the shooting was to scare people.

(Resp't's Answer, Ex. 7 at p. 34-38.) A jury convicted Petitioner of second degree murder in 1991. The trial court sentenced Petitioner to seventeen years to life imprisonment. On October 12, 2005, the Board conducted a hearing to determine Petitioner's suitability for parole. The Board concluded that Petitioner was not suitable for parole at this time because he posed an unreasonable risk of danger to society or threat to public safety if released from prison.

Petitioner challenged the Board's decision denying him parole in Alameda County Superior Court via a state habeas petition. That court denied his petition on January 13, 2006. The California Court of Appeal, First Appellate District and the California Supreme Court denied Petitioner's state habeas petition without written opinions.

### III. APPLICABLE LAW FOR FEDERAL HABEAS CORPUS

An application for writ of habeas corpus by a person in custody under judgment of a state court can only be granted for violations of the Constitution or laws of the United States. See 28 U.S.C. § 2254(a); see also Peltier v. Wright, 15 F.3d 860, 861 (9th Cir. 1993); Middleton v. Cupp, 768 F.2d 1083, 1085 (9th Cir. 1985) (citing Engle v. Isaac, 456 U.S. 107, 119 (1982)). Petitioner filed this petition for writ of habeas corpus after April 24, 1996, thus the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") applies. See Lindh v. Murphy, 521 U.S.

3

320, 326 (1997). Under AEDPA, federal habeas corpus relief is not available for any claim decided on the merits in the state court proceedings unless the state court's adjudication of the claim: (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in state court. See 28 U.S.C. 2254(d).

If a state court's decision does not meet the criteria set forth in § 2254(d), a reviewing court must conduct a *de novo* review of a petitioner's habeas claims. See Delgadillo v. Woodford, 527 F.3d 919, 925 (9th Cir. 2008). Additionally, if a state court reaches a decision on the merits but provides no reasoning to support its conclusion, a federal habeas court independently reviews the record to determine whether habeas corpus relief is available under § 2254(d). See Larson v. Palmateer, 515 F.3d 1057, 1062 (9th Cir. 2010).

As a threshold matter, this Court must "first decide what constitutes 'clearly established Federal law, as determined by the Supreme Court of the United States.'" Lockyer v. Andrande, 538 U.S. 63, 71 (2003) (quoting 28 U.S.C. § 2254(d)(1)). "'[C]learly established federal law' under § 2254(d)(1) is the governing legal principle or principles set forth by the Supreme Court at the time the state court renders its decision.'" Id. This Court must consider whether the state court's decision was "contrary to, or involved an unreasonable application of, clearly established Federal law." Lockyer, 538 U.S. at 72. Under the unreasonable application clause, a federal habeas court making the unreasonable application inquiry should ask whether the state court's application of clearly established federal law was "objectively unreasonable." See Williams v. Taylor, 529 U.S. 362, 409 (2000). Thus, "a federal court may not issue the writ simply because the court concludes in its independent judgment that the relevant state court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." Id. at 411. Although only Supreme Court law is binding on the states, Ninth Circuit precedent remains relevant persuasive authority in determining whether a state court

4

1  decision is an objectively unreasonable application of clearly established federal law. See Clark
2  v. Murphy, 331 F.3d 1062, 1072 (9th Cir. 2003) ("While only the Supreme Court's precedents
3  are binding . . . and only those precedents need be reasonably applied, we may look for guidance
4  to circuit precedents.").

5  The first step in applying AEDPA's standards is to "identify the state court decision that
6  is appropriate for our review." See Barker v. Fleming, 423 F.3d 1085, 1091 (9th Cir. 2005).
7  When more than one court adjudicated Petitioner's claims, a federal habeas court analyzes the
8  last reasoned decision. Id. (citing Ylst v. Nunnemaker, 501 U.S. 797, 803 (1991)). In this case,
9  the last reasoned state court opinion was from the Alameda County Superior Court.

10  IV. DISCUSSION OF PETITIONER'S CLAIMS
11  A. Claim I
12  First, Petitioner asserts that the CDCR failed to comply with section 62090.13 of its
13  operations manual by not obtaining a new psychiatric evaluation prior to Petitioner's suitability
14  hearing. In this case, the Board used Petitioner's psychological exam from 2001 during the
15  parole suitability hearing. During the state habeas proceedings, the Attorney General conceded
16  that the Department of Corrections failed comply with section 62090.13 when a new
17  psychological report was not prepared. (See Resp't's Answer, Ex. 7 at p. 4.) However, this does
18  not mean that Petitioner is entitled to federal habeas relief.

19  Petitioner alludes to the fact that this failure to order a new psychological report denied
20  him his due process and equal protection rights. Nevertheless, the foregoing claim is clearly
21  premised on the alleged misapplication of state law in the form of the operations manual.
22  Accordingly, this claim is not cognizable on federal habeas review. See 28 U.S.C. § 2254(a);
23  Estelle v. McGuire, 502 U.S. 62, 67-68 ("In conducting habeas review, a federal court is limited
24  to deciding whether a conviction violated the Constitution, laws, or treaties of the United
25  States."); Langford v. Day, 110 F.3d 1380, 1389 (9th Cir. 1996) ("[A]lleged errors in the
26  application of state law are not cognizable in federal habeas corpus."). The fact that Petitioner

attempts to characterize this claim as a federal constitutional claim is not sufficient to render it as such. See, e.g., Little v. Crawford, 449 F.3d 1075, 1083 (9th Cir. 2006) ("We cannot treat a mere error of state law, if one occurred, as a denial of due process; otherwise, every erroneous decision by a state court on state law would come here as a federal constitutional question."). Thus, Petitioner is not entitled to federal habeas relief on Claim I.[2]

B. Claim II

In Claim II, Petitioner alleges that the CDCR's denial of Petitioner's parole violated due process because the denial was based solely on the facts of the commitment offense. The Due Process Clause of the Fourteenth Amendment prohibits state action that deprives a person of life, liberty, or property without due process of law. A person alleging a due process violation must first demonstrate that he or she was deprived of a protected liberty or property interest, and then show that the procedures attendant upon the deprivation were not constitutionally sufficient. See Ky. Dep't of Corr. v. Thompson, 490 U.S. 454, 459-60 (1989).

A protected liberty interest may arise either from the Due Process Clause itself or from state laws. See, e.g., Bd. of Pardons v. Allen, 482 U.S. 369, 373 (1987). The United States Constitution does not, in and of itself, create a protected liberty interest in the receipt of a parole date. See Jago v. Van Curen, 454 U.S. 14, 17-21 (1981). However, if a state's statutory parole scheme uses mandatory language, it "creates a presumption that parole release will be granted" when or unless certain designated findings are made, thereby giving rise to a constitutional

---

[2] Additionally, it is worth noting that a parole board's procedures are constitutionally adequate under the due process clause if the inmate is given an opportunity to be heard and a decision informing him of the reasons why he did not qualify for parole. See Greenholtz v. Inmates of Neb. Penal and Corr. Complex, 442 U.S. 1, 16 (1979). Both of those procedures were met in this case. Furthermore, Petitioner cites to no authority that the Board could not consider the 2001 psychological report. See, e.g., Rosas v. Nielsen, 428 F.3d 1229, 1232-33 (9th Cir. 2005) ("The circumstances of Rosas's crime, along with his *psychological reports* constituted evidence with sufficient reliability to support the Board's denial of parole.") (emphasis added) overruled on other grounds, Hayward, 603 F.3d 546. Additionally, as discussed in infra Part IV.B.iii, the Board had "some evidence" aside from the 2001 psychological report to support its finding that Petitioner posed an unreasonable risk of danger to society or a threat to public safety if released from prison on parole.

liberty interest. McQuillian v. Duncan, 306 F.3d 895, 901 (9th Cir. 2002) (quoting Greenholtz v. Inmates of Neb. Penal and Corr. Complex, 442 U.S. 1, 12 (1979)).

The full panoply of rights afforded a defendant in a criminal proceeding is not constitutionally mandated in the context of a parole proceeding. See Pedro v. Or. Parole Bd., 825 F.2d 1396, 1398-99 (9th Cir. 1987). As previously noted, the Supreme Court has held that a parole board's procedures are constitutionally adequate if the inmate is given an opportunity to be heard and a decision informing him of the reasons he did not qualify for parole. See Greenholtz, 442 U.S. at 16.

As a matter of state law, denial of parole to California inmates must be supported by at least "some evidence" demonstrating current dangerousness. See Hayward v. Marshall, 603 F.3d 546, 562-63 (9th Cir. 2010) (en banc) (citing In re Rosenkrantz, 29 Cal. 4th 616, 128 Cal. Rptr. 2d 104, 59 P.3d 174 (2002); In re Lawrence, 44 Cal. 4th 1181, 82 Cal. Rptr. 3d 169, 190 P.3d 535 (2008); In re Shaputis, 44 Cal. 4th 1241, 82 Cal. Rptr. 3d 213, 190 P.3d 573 (2008)). "California's 'some evidence' requirement is a component of the liberty interest created by the parole system of the state." Cooke v. Solis, 606 F.3d 1206, 1213 (9th Cir. 2010) (per curiam). Thus, a reviewing court such as this one must "decide whether the California judicial decision approving the [Board's] decision rejecting parole was an 'unreasonable application' of the California 'some evidence' requirement or was it 'based on an unreasonable determination of the facts in light of the evidence.'"[3] Hayward, 603 F.3d at 562-63.

The analysis of whether some evidence supports denial of parole to a California state inmate is framed by the state's statutes and regulations governing parole suitability

---

[3] To the extent that the Respondent argues that Petitioner's claim is not cognizable on federal habeas review under AEDPA or that Petitioner does not have a federally protected interest in parole, the Ninth Circuit has specifically held that "due process challenges to California courts' application of the 'some evidence' requirement are cognizable on federal habeas review under AEDPA," and that "California's 'some evidence" requirement is a component of the liberty interest created by the parole system of that state." Cooke, 606 F.3d at 1213 (citing Hayward, 603 F.3d at 561-64).

1  determinations. See Irons v. Carey, 505 F.3d 846, 851 (9th Cir. 2007), overruled in part on other
2  grounds, Hayward, 603 F.3d 546. This court "must look to California law to determine the
3  findings that are necessary to deem a prisoner unsuitable for parole, and then must review the
4  record to determine whether the state court decision holding that these findings were supported
5  by 'some evidence' . . . constituted an unreasonable application of the 'some evidence'
6  principle." Id.

7  California Penal Code section 3041 sets forth the state's legislative standards for
8  determining parole for life-sentenced prisoners. Section 3041(a) provides that, ""[o]ne year prior
9  to the inmate's minimum eligible release date a panel . . . shall again meet with the inmate and
10  shall normally set a parole release date." Cal. Penal Code § 3041(a). However, subsection (b)
11  states an exception to the regular and early setting of a lifer's term, if the Board determines "that
12  the gravity of the current convicted offense or offenses, or the timing and gravity of current or
13  past convicted offense or offenses, is such that the consideration of public safety requires a more
14  lengthy period of incarceration for this individual." Cal. Penal Code § 3041(b).

15  Title 15, Section 2402 of the California Code of Regulations sets for various factors to be
16  considered by the Board in its parole suitability findings for murderers. "The regulation is
17  designed to guide the Board's assessment of whether the inmate poses 'an unreasonable risk of
18  danger to society if released from prison,' and thus whether he or she is suitable for parole." In
19  re Lawrence, 44 Cal. 4th at 1214, 82 Cal. Rptr. 3d 169, 190 P.3d 535. The Board is directed to
20  consider all relevant, reliable information available regarding:

> the circumstances of the prisoner's social history; past and present mental state; past criminal history, including involvement in other criminal misconduct which is reliably documented; the base and other commitment offenses, including behavior before, during and after the crime; past and present attitude toward the crime; any conditions of treatment or control, including the use of special conditions under which the prisoner may safely be released to the community; and any other information which bears on the prisoner's suitability for release.

26  15 Cal. Code Regs. § 2402(b). The regulation also lists several specific circumstances which

8

tend to show suitability or unsuitability for parole. Id. § 2402(c)-(d).[4] The overriding concern is

---

[4] Circumstances tending to indicate unsuitability include:

> (1) Commitment Offense. The prisoner committed the offense in an especially heinous, atrocious or cruel manner. The factors to be considered include:
>    (A) Multiple victims were attacked, injured or killed in the same or separate incidents.
>    (B) The offense was carried out in a dispassionate and calculated manner, such as an execution style murder.
>    (C) The victim was abused, defiled or mutilated during or after the offense.
>    (D) The offense was carried out in a manner which demonstrates an exceptionally callous disregard for human suffering.
>    (E) The motive for the crime is inexplicable or very trivial in relation to the offense.
> (2) Previous Record of Violence. The prisoner on previous occasions inflicted or attempted to inflict serious injury on a victim, particularly if the prisoner demonstrated serious assaultive behavior at an early age.
> (3) Unstable social history. The prisoner has a history of unstable or tumultuous relationships with others.
> (4) Sadistic Sexual Offenses. The prisoner has previously sexually assaulted another in a manner calculated to inflict unusual pain or fear upon the victim.
> (5) Psychological Factors. The prisoner has a lengthy history of severe mental problems related to the offense.
> (6) Institutional Behavior. The prisoner has engaged in serious misconduct in prison or jail.

15 Cal. Code Regs. § 2402(c).

Circumstances tending to indicate suitability include:

> (1) No Juvenile Record. The prisoner does not have a record of assaulting others as a juvenile or committing crimes with a potential of personal harm to victims.
> (2) Stable Social History. The prisoner has experienced reasonably stable relationships with others.
> (3) Signs of Remorse. The prisoner performed acts which tend to indicate the presence of remorse, such as attempting to repair the damage, seeking help for or relieving the suffering of the victim, or indicating that he understands the nature and magnitude of the offense.
> (4) Motivation for Crime. The prisoner committed his crime as the result of significant stress in his life, especially if the stress has built over a long period of time.
> (5) Battered Woman Syndrome. At the time of the commission of the crime, the prisoner suffered from Battered Woman Syndrome, as defined in section 2000(b), and it appears the criminal behavior was the result of that victimization.
> (6) Lack of Criminal History. The prisoner lacks any significant history of violent crime.
> (7) Age. The prisoner's present age reduces the probability of recidivism.

9

1  public safety and the focus is on the inmate's *current* dangerousness. See In re Lawrence, 44
2  Cal. 4th at 1205, 82 Cal. Rptr. 3d 169, 190 P.3d 535. Thus, the proper articulation of the
3  standard of review is not whether some evidence supports the reasons cited for denying parole,
4  but whether some evidence indicates that the inmate's release would unreasonably endanger
5  public safety. See In re Shaputis, 44 Cal. 4th at 1254, 82 Cal. Rptr. 3d 213, 190 P.3d 573. There
6  must be a nexus between the facts relied upon and the ultimate conclusion that the prisoner
7  continues to be a threat to public safety. In re Lawrence, 44 Cal. 4th at 1227, 82 Cal. Rptr. 3d
8  169, 190 P.3d 535. As to the circumstances of the commitment offense, the Lawrence court
9  concluded that while:

> the Board and the Governor may rely upon the aggravated circumstances of the commitment offense as a basis for a decision denying parole, the aggravated nature of the crime does not in and of itself provide some evidence of current dangerousness to the public unless the record also establishes that something in the prisoner's pre- or post-incarceration history, or his current demeanor or mental state, indicates that the implications regarding the prisoner's dangerousness that derive from his or her commission of the commitment offense remain probative to the statutory determination of a continuing threat to public safety.

Id. at 1214, 82 Cal. Rptr. 3d 169, 190 P.3d 535.

        i.    2005 Board Decision

The panel of the Board that presided over Petitioner's 2005 suitability hearing considered the factors bearing on Petitioner's suitability for parole and weighed those factors against releasing Petitioner on parole. The Board stated the following in deciding to deny Petitioner parole:

> Mr. Tafoya, the Panel has reviewed all the information received at

---

(8) Understanding and Plans for Future. The prisoner has made realistic plans for release or has developed marketable skills that can be put to use upon release.
(9) Institutional Behavior. Institutional activities indicate an enhanced ability to function within the law upon release.

Id. § 2402(d).

10

the hearing – received from the public and from all files and relied on the following circumstances to conclude that you're not suitable for parole and you would continue to pose an unreasonable risk of danger to society or threat to public safety if released from prison. We evaluated your case, as we evaluate all cases, we are – start out by looking at the examining factors related to the commitment offense. In your case, we find that the offense is aggravated, as we discussed, and the end result being murder of a man necessary to constitute second-degree murder, in that it was carried out in a calculated manner. And what I mean by that is, given the circumstances which confronted you and your crime partner at the time, shots had been fired at your van, you had an opportunity to reflect upon any course of action to take, you discussed it, talked about it, you got the guns, and then you went out after having decided what you were going to do and you did that, or at least from the results, i.e. the death of the individual who was killed, and certainly if this was the response to putting holes in the van when you were not subject to immediate attack and there were alternatives availability to you.

The motive for this is very trivial in relationship to that offense. There exists (indiscernible) but it is noted with respect to the intake officer at San Quentin that you have denied. I note this for the record, and obviously the District Attorney raises an issue and pointed our attention to it, and he raises the issue that obviously – that casts – to put on the lights on us, and if you look at that in that context, this is somebody who you knew, dislike, and in your first (indiscernible) reports it's that the victim in this case just happened to be at the wrong place at the wrong time and was the object – approaching object of misguided action. When we read what you reportedly had said, you look at it in a whole different light. Oh, wow, maybe you knew this guy, you didn't like him. And the reason that I state this, that disparity is going to be there, and you need to address that. If you're saying that I didn't say that, then you need to put that on the record because if anybody reviewing this is going to note that disparity. If there's other evidence that supports that, maybe you want to reconsider, I don't know. I don't know what was in your head at that time. You obviously said at one point you want to be careful and make sure that you're candid with us about what you said because discrepancies will be pointed out, and that's a discrepancy, and yeah, say that we resolved it, but we are aware that it's there, and you need to be aware of it too, and you may want to address it prior to the next hearing. And these conclusions are supported in the record and the facts as we read them into the record (indiscernible) guns being fired at your vehicle, which resulted in you and your crime partner had decided to retaliate. But you had an opportunity to reflect upon that action, to obtain the weapons to do so, and do a survey of the scene, and then go back and, you know, fire the shot (indiscernible) and resulted in the victim's death.

11

(Indiscernible) no juvenile record and no adult record, and that instance too, it's kind of hard us to understand what got you into those circumstances. We find (indiscernible) institution and you did come into conflict there during a period of time which resulted into six serious disciplinaries, 115s, two counseling chronos and (indiscernible) you look to be involved in a gang lifestyle and prison culture. (Indiscernible) determined that that was not an appropriate to go, and you went through a process of debriefing, which commenced in '98 and concluded in '99, you are to be commended for that's, but what has been through combination of the magnitude of the offense and period of time that you have had negative behavior in the institution means that you've had a really short period of time to kind of turn that around, and we want to see an extended period of time of positive behavior before we make a finding. We have considered the psychiatric report (indiscernible) which was conducted September 18, 2001, which basically - similarly as we commended you for apparently making the transition from your prior custodial history and making a turn around, and it indicated then, which it still does now, that we need additional time to solidify those gains, give you time to (indiscernible). Certainly, we've also considered the impact put from the District Attorney's office of Alameda County, which was submitted in the form of a letter which we discussed. We do commend you for the – what you've done since your time of your debriefing into the institution. You've engaged yourself in self-help (indiscernible) but see what the classes that you've taken and what you've done, you seem to have difficult time communicating that to us. You have to make a positive finding that the classes that you've taken have become a part of your life. It's difficult when most people come in here. They want to list classes they've taken. It's hard for us to know (indiscernible) they comments that they're smart enough not to do classes. In your case, it's difficult for us to decide whether your inability to present stronger evidence is because you're nervous or because you don't know. We don't know one way or the other, and it was important that we have a strong feeling that not only do you get it, but that it's part of your life, it's a change. It is truly such that we can confidently recommend to the community, (indiscernible) of the Board, anybody, yes for it and that this was an unfortunate accident, this crime you committed, is carried out from such that would be not – that are not going to be repeated. So we commend you for the work that you've done. We want you to continue to do that and explore ways about how you can demonstrate to the Board, and to yourself, how this stuff is going to be a part of you. Given that the gains that are significant are still recent, that you must demonstrate an ability to maintain those gains for an extended period of time. Because of both the enormity of the crime and your period of disciplinary behavior in the institution, which requires discipline, and the recent time in which you've turn that about, in a separate decision that the hearing Panel finds that because of those factors it's not reasonable to assume that you would be deemed granted a

> parole date for at least three years, so we deny you for that three-year period . . . .
>
> Your parole plans seem to be in order. You know how to take the initial step. Keep those contacts. Do what you can to continue to improve in all of this. Education, vocation and through self-help. Improve your classification score so you can improve the opportunity that are availability to you.

(Resp't's Answer, Ex. 7 at p. 75-81.)

### ii. Superior Court Decision

On state habeas corpus review, the Alameda County Superior Court denied Petitioner's request for habeas relief. The court stated the following:

> Petition is denied. Petitioner has failed to provide a complete record for the court to review his claims. However, based on the information provided, the Petition fails to state a prima facie case for relief. Even though Petitioner has submitted numerous documents in support of his Petition, review of the transcripts provided and documents pertaining to the October 12, 2005 hearing indicate that there was no abuse of discretion by the Board of Prison Terms. The factual basis of the BPT's decision granting or denying parole is subject to a limited judicial review. A Court may inquire only whether some evidence in the record before the BPT supports the decision to deny parole. The nature of the offense alone can be sufficient to deny parole. (In Re Rosenkrantz (2002) 29 Cal. 4th 616, 652, 658, 682. The record presented to this Court for review demonstrates that there was certainly some evidence, including, but not limited to the committing offense, Petitioner's disciplinary record while institutionalized, and the BPT's evaluation that Petitioner should receive additional vocational training, counseling and self-help programming to enhance his suitability for parole eligibility. There is nothing in the record that indicates that the Board's decision was arbitrary or capricious, nor that Petitioner's equal protection or due process rights were violated. Thus, Petitioner has failed to meet his burden of sufficiently proving or supporting the allegations that serves as the basis for habeas relief.

(Pet'r's Pet. at p. 9.)

### iii. Analysis of Claim II

The state court denied this claim on the merits and specifically noted that "the nature of the offense alone can be sufficient to deny parole." (Id. (citation omitted).) However, the state

court also specifically cited to "some evidence" beyond the nature of the commitment offense which supported an inference of Petitioner's current dangerousness. As previously stated, the question is whether there is something in Petitioner's pre or post-incarceration history or his current demeanor or mental state that supports the inference of current dangerousness. See Hayward, 603 F.3d at 562.

The record supports that there was "some evidence" to support the inference of Petitioner's current dangerousness. Both the Board and the state court noted that: (1) Petitioner had several disciplinary infractions while in prison; and (2) Petitioner should receive additional counseling and self-help programming to enhance his parole chances. This cited evidence by the state court is supported in the record and creates a modicum of evidence to create a nexus between Petitioner's commitment offense and his current dangerousness. See In re Lawrence, 44 Cal. 4th at 1226, 82 Cal. Rptr. 3d 169, 190 P.3d 535 (stating that the deferential standard of review requires credit to be given to findings if they are supported by a modicum of evidence). Petitioner was cited for several disciplinary infractions while incarcerated. Furthermore, the Board stated that based on Petitioner's testimony during the hearing they "don't know one way or the other" whether the self-help classes that Petitioner had taken had "become a part of [Petitioner's] life." (Resp't's Answer, Ex. 7 at p. 79.)

Accordingly, under Hayward/Lawrence, there was a nexus between the commitment offense and Petitioner's current dangerousness. There was a modicum of "some evidence" in the record that supported the Board's ultimate determination that Petitioner posed a current risk of danger to society such that Petitioner's constitutional rights were not violated by the denial of his parole.[5] Therefore, Petitioner is not entitled to federal habeas relief on Claim II.

---

[5] As previously stated, the proper standard by which to review the Board's denial of parole is whether Petitioner poses a current risk of danger to society, not whether Petitioner's commitment offense alone can be sufficient to deny parole. Thus, the state court decision may have been an unreasonable application of California's "some evidence" requirement when it stated that "[t]he nature of the offense alone can be sufficient to deny parole."

14

C. Claim III

In Claim III, Petitioner asserts that Petitioner's due process rights were violated when the denial of parole was based upon a falsified statement introduced at Petitioner's parole suitability hearing. Petitioner asserts that the District Attorney introduced false information at his parole suitability hearing in the form of his letter opposing parole with included a statement from correctional counselor J. Haviland that was placed in Petitioner's file on January 29, 1992. The counselor stated that, "[d]uring the reception interview, Tafoya was alert and cooperative. He related that the victim and he had a long standing hatred for each other and he knew it was him that shot at the van." (Pet'r's Pet. at Ex. C.) Petitioner denies making any such statement and asserts the correctional counselor placed the statement in his file with "ill intent." (Id. at p. 51.) He argues that the "falsified information was relied on by CDCR to a significant constitutional degree violating [his] due process." (Id. at p. 6.)

Although Petitioner asserts that he never made such a statement to the correctional counselor at San Quintin, he provides no evidence that this is the case. His conclusory allegation that he never made this statement is insufficient to warrant habeas relief. See Jones v. Gomez, 66 F.3d 199, 204-05 (9th Cir. 1995) ("[c]onclusory allegations which are not supported by a statement of specific facts do not warrant habeas relief.") (citations omitted). The Board was

---

However, even if this Court were to find that the state court's decision was an unreasonable application of California's "some evidence" requirement, that would not end this court's habeas inquiry. See Butler v. Curry, 528 F.3d 624, 641 (9th Cir. 2008) (holding that, after concluding that the lower court's decision was contrary to clearly established Supreme Court precedent, the Court must then make a finding as to whether the petitioner's constitutional rights have actually been violated). A federal habeas court's "power to grant the writ of habeas corpus to a state inmate depends on his actually being 'in custody in violation of the Constitution or laws of the United States.'" Id. Thus, Petitioner is only entitled to habeas corpus relief if his due process rights were violated by the lack of "some evidence" to support the Board's denial of parole. As stated above, there was a modicum of "some evidence" in the record that created a nexus between Petitioner's commitment offense and his current dangerousness. Therefore, even if the state court unreasonably applied California's "some evidence" standard, Petitioner is not in custody in violation of the Constitution or the laws of the United States to warrant federal habeas relief.

15

1  within his authority to resolve the conflict between the correctional counselor's statement in
2  Petitioner's file and Petitioner's own statement that he never made this statement to the
3  correctional counselor. See In re Lazor, 172 Cal. App. 4th 1195, 1198, 92 Cal. Rptr. 36 (2009)
4  (stating that the "some evidence" standard is extremely deferential and resolution of any conflicts
5  in the evidence are within the authority of the Board); see also Rosenkrantz, 29 Cal. 4th at 676-
6  77, 128 Cal. Rptr. 2d 104, 59 P.3d 174 ("Due process of law requires that the Board's decision
7  be supported by some evidence in the record. Only a modicum of evidence is required.
8  Resolution of any conflicts in the evidence and the weight to be given the evidence are matters
9  within the authority of the [Board].").

10  Furthermore, while the Board noted that there was a discrepancy in the record regarding
11  whether Petitioner actually made this statement to the correctional counselor, it did not
12  necessarily appear to resolve that conflict in the evidence against the Petitioner. Instead, the
13  Board put Petitioner on notice that there was this discrepancy in the record in the event he
14  wanted "to address it prior to the next hearing." (Resp't's Answer, Ex. 7 at 77.) Furthermore,
15  the Board (as well as the state court) cited to other "some evidence" in finding that Petitioner
16  posed a current risk of danger to society in the form of Petitioner's post-incarceration disciplinary
17  problems and his need for further self-help. For the foregoing reasons, Petitioner is not entitled
18  to habeas relief on Claim III.

19  D. Claim IV

20  In his final claim, Petitioner alleges that his parole counsel was ineffective when he
21  allowed the falsified statement outlined in Claim III to be introduced at Petitioner's parole
22  suitability hearing.[6] He asserts that his attorney should have "moved for a continuance or asked

---

[6] Respondent asserts that this Claim is unexhausted because Petitioner did not raise it before the California Supreme Court. Notwithstanding Respondent's argument, unexhausted claims may "be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies in the courts of the State." 28 U.S.C. § 2254(b)(2). A federal court considering a habeas corpus petition may deny an unexhausted claim on the merits when it is perfectly clear

16

that the material not be considered on grounds that he did not receive prior notice." (Pet'r's Pet. at p. 6.)

"[T]he protections of the Sixth Amendment right to counsel do not extend to either state collateral proceedings or federal habeas corpus proceedings." Bonin v. Vasquez, 999 F.2d 425, 430 (9th Cir. 1993). "[S]ince the setting of a minimum term is not part of the criminal prosecution, the full panoply of rights due a defendant in such a proceeding is not constitutionally mandated." Pedro, 825 F.2d at 1399. As previously stated, the Supreme Court has held that a parole board's procedures are constitutionally adequate if the inmate is given an opportunity to be heard and a decision informing him of the reasons he did not qualify for parole. See Greenholtz, 442 U.S. at 16. In this case, Petitioner was given an opportunity to be heard as well as a decision which informed him of the reasons why he did not qualify for parole. Petitioner is not entitled to habeas relief on this non-cognizable ineffective assistance of counsel claim.

Nevertheless, even if Petitioner could raise an ineffective assistance of counsel claim in the parole hearing context, this Claim would fail on the merits. In Strickland v. Washington, 466 U.S. 668 (1984), the Supreme Court articulated the test for demonstrating ineffective assistance of counsel. First, the petitioner must show that considering all the circumstances, counsel's performance fell below an objective standard of reasonableness. See id. at 688. Petitioner must identify the acts or omissions that are alleged not to have been the result of reasonable professional judgment. See id. at 690. The federal court then must determine whether in light of all the circumstances, the identified acts or omissions were outside the wide range of professional competent assistance. See id.

Second, a petitioner must affirmatively prove prejudice. See id. at 693. Prejudice is found where "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694. A reasonable probability is "a

---

that the claim is not "colorable." See Cassett v. Stewart, 406 F.3d 614, 624 (9th Cir. 2005).

17

probability sufficient to undermine confidence in the outcome." Id. A reviewing court "need not determine whether counsel's performance was deficient before examining the prejudice suffered by defendant as a result of the alleged deficiencies . . . If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice . . . that course should be followed." Pizzuto v. Arave, 280 F.3d 949, 955 (9th Cir. 2002) (citing Strickland, 466 U.S. at 697). As previously noted in supra Part IV.B.ii -iii, the state court correctly determined that there was "some evidence" in the record regarding Petitioner's current dangerousness in the form of Petitioner's disciplinary history and need for further self-help. Thus, Petitioner cannot show that he was prejudiced by his parole counsel's failure to object to the introduction of the District Attorney's letter at his parole hearing. That piece of evidence was not even relied upon by the state court in upholding the Board's decision to deny Petitioner parole. Claim IV would not entitle Petitioner to federal habeas relief even if it was a cognizable claim.

## V. CONCLUSION

For all of the foregoing reasons, IT IS HEREBY RECOMMENDED that Petitioner's application for writ of habeas corpus be denied.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(1). Within twenty-one days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Any reply to the objections shall be served and filed within seven days after service of the objections. The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991). In any objections he elects to file, Petitioner may address whether a certificate of appealability should issue in the event he elects to file an appeal from the judgment in this case. See Rule 11, Federal Rules Governing Section 2254 Cases (the district court must issue or deny a certificate of appealability

when it enters a final order adverse to the applicant).

DATED:  September 9, 2010

TIMOTHY J BOMMER
UNITED STATES MAGISTRATE JUDGE